**In re BICOASTAL CORPORATION d/b/a SimuFlite, f/k/a The Singer Company, Debtor.**

**Bankruptcy No. 89–8191–BKC–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 10, 1991.

Harley Riedel, Dykema Gossett, Cindy LoCicero, Tampa, Fla., for debtor.

William Goldman, Brown & Wood, New York City, Donald E. Engle, Oppenheimer Wolff & Donnelly, St. Paul, Minn., for Unsecured Creditors.

Sarah L. Kistler, Asst. U.S. Trustee, Tampa, Fla.

## ORDER ON INTERIM FEE APPLICATION OF POTTER ANDERSON & CORROON 1395, 1497

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 11 case, and the matter under consideration is an Interim Fee Application filed by the law firm of Potter Anderson & Corroon. The law firm seeks an allowance of $160,036.50 for services rendered to Bicoastal Corporation, d/b/a SimuFlite, f/k/a The Singer Company (Debtor). The services rendered by the law firm as special counsel cover the period of January 9, 1991 up to and including March 26, 1991. The firm's Application is challenged by the Official Committee of Unsecured Creditors on the basis that the services rendered by the law firm did not produce any measurable benefit to the estate.

At the duly noticed hearing, the Court heard argument of counsel in support of the Application, and counsel representing other parties of interest, and having considered the Application together with the pertinent facts of this highly complex Chapter 11 case, this Court now finds and concludes as follows:

At the time of the commencement of this case, the Board of Directors of the Debtor was controlled by Paul Bilzerian, who was the Chairman of the Board. The Debtor, which is the surviving entity of the leveraged buy out (LBO) of the well known Singer Company, agreed, in order to facilitate the buy-out, that as part of the financing of the takeover, to grant Mesa Holding Limited Partnership (Mesa), a group controlled by T. Boone Pickens, a right to acquire control of the Debtor in the event the Debtor failed to meet its obligation on a promissory note executed in favor of Mesa in the amount of $150,000. Specifically, the contract provided that Mesa, who acquired all preferred stock of the Debtor as part of the L.B.O. transaction, was granted a right to vote its previously non-voting stock in the event the Debtor defaulted on the note.

The Debtor did default on the note. Mesa promptly insisted upon exercising its right to vote its preferred stock and thus to acquire control of the Board of Directors of the Debtor. The then-existing Board of Directors, controlled by Bilzerian, resisted Mesa's attempt and instituted an adversary proceeding in this Court and sought a determination that Mesa had no right to rely on its admitted default to take over the control of the Board of Directors of the Debtor. Mesa promptly filed a Motion and sought relief from the automatic stay in order to proceed in a Court of Chancery of the State of Delaware (Chancery Court), the State of incorporation of the Debtor, to resolve a dispute concerning the issue of the corporate governance. The motion was heard in due course and this Court, having considered the matter, granted the Motion, declined to consider the matter and authorized Mesa to proceed to litigate this issue in a Chancery Court of Delaware.

In order to handle this litigation, the Debtor sought authorization to employ the law firm of Potter Anderson & Corroon (Potter Anderson), a law firm presented to this Court to be experts in corporate governance matters. The Application for Employment of the law firm was granted and the law firm was authorized to act as special counsel for the limited purpose of representing the Debtor in the Delaware litigation. It should be noted in this connection that the Application to employ Potter Anderson was duly noticed to all parties of interest, including the Official Creditors' Committee and the Office of the United States Trustee, and no one interposed any objection to the Application.

Potter Anderson first sought to remove, without success, the litigation from the Chancery Court to the law side of the Court of Delaware. The matter was thereafter considered by the Chancery Court on stipulated facts instead of a trial, which held that by virtue of the default by the Debtor, Mesa was authorized to exercise its voting rights and reconstitute the Board of Directors. Potter Anderson promptly filed a notice of appeal to the Delaware Supreme Court which considered the matter without delay and did not take the matter under advisement but announced its decision from the bench affirming the decision of the Chancery Court, a highly unusual procedure.

Potter Anderson, in its Fee Application, claims to have spent 800.5 hours in the performance of the services rendered by it in connection with the Delaware litigation. It also seeks, in addition, reimbursement for costs incurred in the amount of $18,-680.89. While Potter Anderson admits, as it must, that the firm's efforts to block Mesa's attempt to take over the control of the Board of Directors of the Debtor and in turn to control the affairs of the Debtor ultimately failed, it contends that the services rendered by Potter Anderson were beneficial to the extent that their involvement brought the corporate governance issue to a speedy resolution.

The Application of Potter Anderson is opposed by the Office of the United States Trustee and by counsel for the Official Committee of Unsecured Creditors. Both challenge any allowance to Potter Anderson on the grounds that the services rendered by Potter Anderson failed to produce any tangible benefit to the estate. While neither of them really urge a total disallowance of the fee request of Potter Anderson, they point out not only the total lack of success in the Delaware litigation but also the total lack of benefit to the estate produced by the services for which allowance is sought.

The difficulty with the proposition urged by the objecting parties is obvious if one considers and relies only on the now well-recognized lodestar principle adopted by the Supreme Court and almost uniformly by all the Circuits. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1984); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Under the lodestar principle, the court in considering a request for allowance by an attorney is required to determine first the reasonable number of hours spent, and then to multiply the same by a reasonable hourly rate. Under this test, the results achieved are theoretically not material and are not a factor to be considered, unlike under the guidelines previously announced by the courts where the result achieved was one of the eleven factors which was required to be considered by the courts when passing on allowance to be made to professionals. *Johnson v. Georgia Express, Inc.*, 488 F.2d 714 (5th Cir.1974); *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.) *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). *In re Grady*, 618 F.2d 19 (8th Cir.1980); *Cle–Ware Industries v. Sokolsky*, 493 F.2d 863 (6th Cir.) *cert. denied*, 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974).

In the present instance however, while the lodestar method may be the primary method of calculating fees, it is not the exclusive method. *Unsecured Creditors' Comm. v. Puget Sound*, 924 F.2d 955 (9th Cir.1991), *citing, In re Yermakov*, 718 F.2d 1465, 1471 (9th Cir.1983). Potter

Anderson was authorized to be employed to perform a specific task, i.e., to litigate the corporate governance issue in Delaware. As noted earlier, the employment was authorized by this Court after a properly noticed hearing on the Application when all parties of interest, including the objectors, appeared and had an opportunity to object to the employment and none of them interposed any objection to the entry of an order authorizing the employment of Potter Anderson as special counsel. Everyone, including the objectors, was fully aware, or at least should have been aware, that the employment of Potter Anderson was to protect the interest of the old Board of Directors, especially to preserve the control of the Board by Bilzerian and certainly not to protect the interest of the estate of the Debtor in general, and certainly not the interest of the creditors. In addition, all interested parties, including the objectors, knew or should have known that regardless of the outcome of the Delaware litigation, Potter Anderson would seek an allowance for the services rendered in the Delaware litigation. This being the case, there is hardly any question that in all fairness Potter Anderson should be awarded an allowance in spite of the lack of success and in spite of the total absence of any real and measurable benefit conferred on the estate of the Debtor by the services rendered.

However, this leaves for consideration the question of what would be an appropriate and fair amount to be awarded to Potter Anderson. This Court has no quarrel with the blended hourly rate of $200 charged by Potter Anderson. In this connection, it should be pointed out, however, that a blind acceptance of the hourly rate charged as reasonable is unwarranted for the following reasons:

In analyzing the hourly rate charged and whether or not same is reasonable, one should take into account the total amount of time spent on the services rendered by attorneys, i.e., parties whose hourly rate is on the high scale, and the total amount of time spent on the services by associates whose hourly rate charge is on the low scale, in order to arrive at the proper blend of the hourly rate. For in-

stance, one might easily create a seemingly reasonable blended hourly rate if the hourly rate charged by associates whose rate is low represents the vast majority of the work performed but the balance of the work performed by partners whose hourly rate is not only high but grossly excessive. As noted earlier, the matter in the Chancery Court in Delaware was submitted on stipulated facts and there was no trial. The legal services involved the preparation of briefs filed in conjunction with the litigation in the Chancery Court and also in the Supreme Court. It is difficult to understand why it was necessary to spend 800 hours or more on these services which ordinarily represents 20 full-time weeks based on a 40-hour work week. Moreover, notwithstanding the lodestar principle, it is not improper to take into consideration the results achieved which, in this Court's judgment, is still a valid factor to be considered at least to the extent as it relates to the number of hours reasonably spent. *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *In re Roger J. Au & Son, Inc.,* 114 B.R. 482, 484–87 (Bankr.N.D.Ohio 1990); *In re Jet Executive International,* 34 B.R. 339, 340–41 (Bankr.S.D.Fla.1983). Having considered the foregoing, it is the considered opinion of this Court that the reasonable fee for the services rendered by Potter Anderson should not exceed the sum of $100,000.00 In addition, Potter Anderson also seeks allowance of expenses in the amount of $18,680.89. This Court is satisfied that several items for which reimbursement is sought are part of general overhead and should not be allowed: e.g., copies in the amount of $3,881.20, unspecified telephone calls in the amount of $2,965.35, fax/fedex charges in the amount of $6,686.55, computer research in the amount of $2,195.00, overtime in the amount of $2,348.49, delivery charges in the amount of $156.00 and meals in the amount of $66.75. The following items are allowed: filing fees in the amount of $304.00 and court reporter fees in the amount of $77.55.

Based on the foregoing, this Court is satisfied that it is appropriate to approve

the Fee Application of Potter Anderson & Corroon in part and to disapprove it in part.

This Order should not be construed either to prohibit Potter Anderson to seek additional compensation from either Mr. Bilzerian or members of the old Board of Directors of the Debtor if it so deemed to be advised.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Application for Attorneys Fees for the period from January 9, 1991 through March 26, 1991 in the amount of $160,036.50 is disapproved. It is further

ORDERED, ADJUDGED AND DECREED that the Application for Attorneys Fees is approved in part and Potter Anderson & Corroon is awarded an interim allowance of compensation for the period from January 9, 1991 through March 26, 1991 in the amount of $100,000.00. It is further

ORDERED, ADJUDGED AND DECREED that the Application for reimbursement of expenses for that period in the amount of $18,680.89 is disapproved. It is further

ORDERED, ADJUDGED AND DECREED that the Application for reimbursement of expenses for that period in the amount of $381.55 is approved.

DONE AND ORDERED.